ZEHMER, Judge.
This is an appeal from an order reinstating appellant Driscoll’s sentence to community control. The appealed order revoked an earlier order that had discharged Dris-coll from community control and terminated the criminal proceedings against him. Finding that the court lacked jurisdiction to reinstate the discharged sentence under the facts of this case, we reverse.
On June 16, 1986, Driscoll pled nolo con-tendere to a charge of shooting into an *1284 occupied building. The court withheld adjudication of guilt and placed Driscoll in a community control program for a period of two years, commencing June 19, 1986. On November 19, 1986, the court ordered that Driscoll “be discharged from community control and that the proceedings in this case be terminated pursuant to Florida Statutes.” (R. 6) The trial court’s order of discharge was entered in reliance upon a petition by Driscoll’s community control officer recommending the discharge. The papers attached to the petition indicated that Driscoll was suffering from terminal lung cancer with an indicated prognosis of six to eighteen months to live, and that the recommendation was approved by the community control officer and his supervisor. The evidence upon which the petition was based included purported medical statements from two physicians indicating that Driscoll was diagnosed as having cancer of the lungs, and a billing statement from each of the physicians for professional services. These documents had been furnished to the officer by Driscoll’s mother. Immediately after the order of discharge was entered, Driscoll was notified by letter that his term of community control “did expire on 11-19-86.” (R. 11)
In January 1987, for reasons not apparent from the record, the state attorney’s office contacted the two physicians on whose written' statements the court had relied in entering the order of discharge, requesting verification of the record information. One physician responded that the records were inaccurate and the diagnosis incorrect. The second responded he had no record of ever having seen Driscoll. As a consequence, in March 1987, the state filed a motion with the court, bearing the style and number of the criminal action against Driscoll, seeking an order to show cause why Driscoll’s mother should not be held guilty of indirect criminal contempt under Fla.R.Crim.P. 3.840. The motion alleged that the actions of the respondent mother constituted “a fraud perpetrated upon the Department of Corrections and court by respondent.” (R. 12) The motion,made no allegation of knowledge or participation in the fraud by Driscoll, and the community control officer’s affidavit filed with the motion recited that Driscoll “at no time represented to this officer that he was suffering from cancer.” The record indicates no effort by the officer, his supervisor, the state attorney, or the court to verify the medical information prior to entry of the order of discharge in November 1986. On March 31, 1987, the court entered an order to show cause directed only to Driscoll’s mother. On April 30,1987, the court found the mother guilty of criminal contempt. The record also contains the following entry: “Mr. Driscoll to have a hearing about restoring to Community Control.” (R. 21)
Thereafter, on June 15, 1987, the state attorney filed a motion in Driscoll’s criminal proceeding requesting the court to reinstate his community control, alleging in pertinent part:
2. Due to the court being misled as to the health of the defendant, the court terminated the community control early.
3. Said termination was based upon a fraud perpetrated upon the court. Whether done with or without the defendant’s knowledge, nevertheless the court’s action (terminating community control) was based upon “facts” presented to the court which have now been shown to be false.
(R. 22). On February 18, 1988, the state attorney filed a request for ruling on the motion to reinstate the defendant to community control. On March 8, 1988, the court entered an order granting the motion to reinstate. The order recited that the matter was heard upon the arguments of counsel in person and by memorandum and that the motion should be granted for the reasons that:
1. The basis upon which the early termination was granted was that the community controlee was allegedly stricken with terminal cancer.
2. The information regarding the terminal illness was falsely and fraudulently given to Edward Patrick Driscoll’s *1285 Community Control supervisor by the defendant’s mother.... The undersigned judge has taken judicial notice of the previous hearing in which this court found her in contempt for perpetrating this fraud upon the court, with intent that her som [sic] be terminated early from community control.
3. In reliance upon the false and fraudulent information regarding Edward Patrick Driscoll’s health, this court earlier entered an order terminating community control. Said order was entered based upon fraud, deceit, and/or misconduct. See State v. Burton, 314 So.2d 136 (Fla.1975); explained in Booker v. State, 503 So.2d 888 at 889 (Fla.1987).
(R. 38). The court order “vacates and sets aside” the November 19, 1986 order and “REINSTATES” Driscoll to community control “for the original period of two (2) years, less the five (5) months and three (3) days previously served on supervision,” to begin immediately. (R. 38).
Appellant raises several points on appeal. Among other things, he contends that the trial court lacked jurisdiction over him sufficient to permit vacation of the order of discharge and reinstatement to community control. He contends that the fraud on the court referred to was not extrinsic fraud and was thus legally insufficient to authorize vacation of the order of discharge. He also contends that the vacation of his discharge and reinstatement of his community control erroneously subjects him to multiple punishments for the same crime in violation of the double jeopardy clause of the state and federal constitutions.
The court’s March 8, 1988 order vacating the order of termination and reinstating Driscoll to community control cites State v. Burton, 314 So.2d 136 (Fla.1975). Burton is not authority for vacating Driscoll’s discharge, as it is distinguishable for several fundamental reasons. Burton involved an order granting the defendant’s motion for new trial based on an affidavit of a purported eye witness. Three days after entry of the order granting a new trial, the court, finding that the facts disclosed by the affidavit attached to the motion were in fact false, set aside the order and reinstated the jury verdict. Thus, the defendant in Burton instituted the action to set aside the verdict and obtain a new trial.
By contrast, this case involves a final order of discharge of the defendant, not an order granting a new trial. The final order was not based on an affidavit submitted by Driscoll, but on statements submitted by his mother, apparently without his knowledge, that were unsubstantiated and unin-vestigated by the state. The community control officer, not Driscoll, initiated the petition to terminate defendant’s community control. In Burton the false statements were attached to and incorporated in the defendant’s motion for a new trial; here, the state does not contend that Driscoll was in any way a party to the fraud perpetrated by his mother.
The order discharging Driscoll from the sentence of community control is a final order terminating the state’s jurisdiction over Driscoll. We are aware of no provision, either by statute or by rule, that gives the circuit court power or jurisdiction to revisit and set aside the order of discharge, with a single exception. A final order of discharge affected with extrinsic fraud such as to render it void ab initio may be set aside because it is of no force and effect from its inception.
In ruling that the fraud perpetrated on the court was such that the court was empowered to vacate the final order discharging Driscoll and reinstate his sentence some sixteen months after the order of discharge, the court below erred in mis-characterizing the acts and statements upon which it based its order of discharge as “fraud on the court.” Only extrinsic fraud constitutes fraud on the court; intrinsic fraud is insufficient. Thompson v. Crawford, 479 So.2d 169, 183 (Fla. 3d DCA 1985), citing DeClaire v. Yohanan, 453 So.2d 375, 377 (Fla.1984). Extrinsic fraud is that which is collateral to the issues tried in the case wherein the judgment is rendered; *1286 by contrast, intrinsic fraud involves matters that were or could have been tried. Black’s Law Dictionary 595 (5th ed. 1979).
In Thompson, one issue was whether defendant had feigned a mental illness or defect that led to his acquittal.[1] The court found that because that issue was necessarily tried with the issue of whether Thompson was insane at the time of the offenses, it amounted to intrinsic fraud, stating:
The fraud committed by Thompson was the concealment of his true condition. Thompson “lied” to the court both directly at court appearances and indirectly through the court-appointed experts and an officer of .the court (defense counsel). Like perjury, this conduct constitutes intrinsic fraud, see DeClaire, 453 So.2d at 380, and cannot serve as a basis for setting aside a judgment.
479 So.2d at 184.
DeClaire involved an attempt to set aside a final property settlement agreement on the ground that the petitioner-husband had fraudulently submitted a false statement of net worth in a financial affidavit relied upon in reaching the agreement. The court found that because the affidavit was part of the record in the case, the issue was a matter before the court that could have been tried; therefore, it constituted intrinsic fraud and was insufficient as a basis for setting aside the final settlement agreement. 453 So.2d at 380-381. The court stated:
In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause....
Intrinsic fraud, on the other hand, applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. This Court, consistent with the general rule, has expressly held that false testimony given in a proceeding is intrinsic fraud.
453 So.2d at 377.
The fraud in this case, the false statements made or submitted regarding the status of Driscoll’s health, was intrinsic to the proceeding for terminating Driscoll’s sentence of community control. It could not be characterized as extrinsic fraud because the state was not precluded from litigating the true state of Driscoll’s health at the time of the termination order. The state initiated the proceedings to terminate the sentence and discharge Driscoll from community control. It therefore had the burden to investigate to insure that the medical records and statements offered by Driscoll’s mother were sound. There is no indication in the record that it did so. Yet it was within the control of the state and the state could have, and indeed should have, investigated to verify the matter pri- or to obtaining the final order of termination. Since the matter was intrinsic to and not collateral to Driscoll’s discharge, the court was without jurisdiction to set aside the discharge as a fraud on the court.
This disposition of the case makes it unnecessary to reach the double jeopardy issues.
The appealed order is reversed and the cause is remanded with directions to discharge the defendant.
REVERSED AND REMANDED.
ERVIN and WENTWORTH, JJ., concur.

. As here, the order in Thompson constituted a final judgment and was distinguished by the court from the post-judgment order for new trial in Burton.